We'll now move to Jackson v. Abernathy and Kimberly Clark. Good morning, Your Honors. This is Tamar Weinroth from Pomeranz, LLC, on behalf of the Plaintiff Appellants in this matter. Okay, Ms. Weinroth, could you speak up a little louder if you can, maybe get closer to the phone or raise the volume? Sure. Are you able to hear me better? That's better. Yeah, that is better. And let me just make sure that your adversaries are also on the line. Mr. Jordak and Mr. Joyce. Yes, good morning, Your Honor. It's John Jordak. I'm on the line for the Avanos defendants. And Amy Joyce for Kimberly Clark. Very good. All right. So, Ms. Weinroth, you have reserved three minutes for rebuttal. It's giving you nine minutes now and three minutes of uninterrupted. That sound right? That sounds right. Thank you, Your Honor. Okay. So, on your mark, get set, go. Thank you. I'll just start off by saying I hope everybody is safe and healthy during these trying times. May it please the Court, once again, my name is Tamar Weinroth on behalf of Plaintiffs. In this matter, in denying plaintiffs' motion for release from judgment to file an amended complaint on behalf of investors in Kimberly Clark and Avanos, formerly Hallilard, the District Court erred by ignoring newly added allegations concerning a jury verdict in a fraudulent concealment case on behalf of healthcare providers where, as here, the plaintiff class alleged that the corporate defendants intentionally issued publicly misleading statements regarding their microcool surgical gowns. And this was the Bahamas Surgery Center LLC versus Kimberly Clark and Hallilard case in the Central District of California. In that case, the Bahamas Action Jury found on the fraudulent concealment claim, by clear and convincing evidence, in other words, a higher standard than applies here, that the corporate defendants, Kimberly Clark and Hallilard, intentionally misled, what's the answer? Intentionally misled healthcare providers by representing their microcool surgical gown as high-performance AAMI Level 4 gowns. That designation means, should have meant, anyway, that the gowns provided healthcare workers with the highest level of protection against contracting communicable diseases like HIV and Ebola. They made their statements, in fact, when the Ebola pandemic was at a fever pitch, even though they knew at the time that the gowns, in fact, suffered critical defects, particularly with the seams of the gowns, which allowed for leakage and strikethrough of highly contagious fluid. That is the precise misconduct underlying the claim in this securities class action. Judge Lynch's opinion in SEC versus Grotto is directly on point. And there, and I'll quote Judge Lynch as saying, findings of defendant's intent and knowledge pertaining to a fraudulent concealment claim in another action, based on the same set of alleged facts, more than satisfy the elements of the federal anti-fraud provisions invoked here. So in denying plaintiff's motion in this case, the district court erred by failing to even acknowledge the fraudulent concealment verdict at all. Excuse me. You have one more minute. Thank you. In fact, the district court only analyzed a completely separate claim in the Bahamas action, which was an equitable claim for unfair business practices, but did not analyze the jury verdict on the fraudulent concealment claim at all. But putting the jury verdict aside, there were additional allegations added to the proposed second amended complaint that also would have cured any perceived deficiencies in the element of corporate theater. And those involved the sworn testimony of senior management from both companies in the Bahamas action and in the action here, demonstrating those senior management's knowledge of the microcool failures to satisfy the AAMI level four criteria for surgical gowns during the class period. The knowledge of those senior management employees is properly imputed to the corporate defendants. And I'll quote Judge Calabrese's opinion, the second circuit ruling in Lorelei Financing, Jersey, number three versus Wells Fargo, where court found that plaintiffs had adequately alleged corporate center as to Wachovia based on the center of a managing director. So this was a management level employee who was also not a named defendant who had direct knowledge of the fraud. Just like here, the management level employees in the Bahamas action testified to their own knowledge of the fraud, which is properly imputed to both corporate defendants. There's also the Martian-McClennan case, which I'll quote from there as well, that states, while there is no simple formula for how senior an employee must be in order to serve as a proxy for corporate center, courts have readily attributed the center of management level employees to corporate defendants. The district court here even acknowledged when it dismissed the first amended complaint, that the first amended complaint, which didn't even have the sworn testimony allegations yet, that the first amended complaint had already attested to the alleged knowledge of senior management. But in addition to the jury verdict and in addition to the sworn testimony of management level employees, we also have admissions here. We have the corporate defendant's answer in the Bahamas action. In their answer to the Bahamas action complaint, the corporate defendant admitted to receiving testing results from independent lab testing that showed that the gowns did not consistently provide AAMI level four protection, meaning they allowed liquid and bacterial and viral pathogens to penetrate the gowns. And also, there's the admission of the chief operating officer of Halyard, and this allegation was in fact contained in the first amended complaint, who admitted to having seen a PowerPoint presentation, an internal PowerPoint presentation in 2014, in the middle of the class period, identifying a year and a half gap in sleeve seams passing the industry test for AAMI level four compliance. So we have the jury verdict. Yes. Ms. Weinrub, I want to have some time for some questions. So let's pause here, give the panel a chance to ask some questions, and then if we run out, then you can pick up again. All right. Judge Calabresi, do you have any questions so far for Ms. Weinrub? Are you – you specifically abandoned individual complaint and are going for corporate CIANTR. Now, are you going to corporate CIANTR directly, or are you going to corporate CIANTR by way of individuals whom you are no longer claiming CIANTR for? I'm a little confused about that, and if you – after you answer that question, I may have another one. Sure. Thank you, Your Honor. We determined to appeal the district court's decision only as to the corporations and are not relying on individual defendant CIANTR in order to argue corporate CIANTR here. In the – the allegations that were added to the proposed amended complaint included the jury verdict in the Bahamas action and the fraudulent concealment claim. So I understand that, but then if you are doing corporate CIANTR directly, you have to have statements which are dramatic in what we have said. And it's – whatever the law of California is about other things, it's hard for me to see that the particular statements about this being a good mark or this being an important source of profit reach the level of dramatic that we have required in our cases. Well, Your Honor, the statements were not simply limited to statements about it being an important mark and the other statement that Your Honor mentioned, but the statements included statements that these gowns provided this highest AAMI level for protection to healthcare providers during a time when that was particularly relevant because the Ebola pandemic was at a fever pitch. These were very serious claims that they were making, even though they knew at the time, as the jury verdict found in the Bahamas action, that the gowns did not have that consistent level of protection because they suffered these critical defects. Well, the defects supposedly – I mean, I know that they found that something of that sort in California at a certain time, but it isn't altogether clear when these tests, which were negative, came in. And the first set of tests were by a competitor, which again should say something, but in terms of the level of dramatic error, I find it a little bit hard to reach. Your Honor, I'm sorry. It was a failure to take back some statements, and that again is a little bit less dramatic than the failure in the actual making of statements at a time when one knew it was wrong. Well, Your Honor, the statements that we're alleging were made throughout the class period, and we're also alleging that defendants knew throughout the class period that these critical defects were in the gowns. The gowns weren't tested a single time by a competitor. They were tested monthly, and these tests consistently showed, based on sworn testimony of management-level employees in the Bahamas action, as well as certain of the CWs that we cite in our first amended and in the proposed second amended complaint, that the company knew throughout the entirety of the class period that multiple lots of these gowns, not just one, and it wasn't pre-class period, during the class period, failed to meet the AMI level four standard consistently. And that was even though the company continued on with website and product labeling and marketing materials and pandemic preparedness materials consistently represented that the gowns achieved that level consistently when they did not. Judge Calabresi, do you have any additional questions? No, thank you. All right. Judge Wesley, do you have any questions for Ms. Weinriber? No, thank you. No, thank you. This is Judge Sullivan. I did have a question. It seems to me that when you asked to amend, you relied on certain facts that you're talking about now, but it really was a different theory you were pitching. It seemed that you, at the time you were seeking to amend the complaint, you were still very focused on the individual defendants as the basis for Sienter. It seems on appeal, you have moved away from that towards sort of a direct corporate Sienter theory based on the Bahamas action. But did you make that argument to Judge Swain below? Your Honor, all of the facts that are before this court on appeal were before the record below. I'm not talking about the facts, though. I'm talking about your legal theory, your arguments as to why these facts would make a difference on the Sienter finding. Understood. So we used these facts to allege Sienter ads to all defendants, not just the individual defendants but the corporation as well, which the district court acknowledged in ruling on corporate Sienter when it issued its decision below. Because we made the decision to only appeal ads to the corporate defendants, the argument had to necessarily and logically shift to focus solely on the corporation and not on those individuals. But the entirety of the theory of corporate Sienter that is put before this court is based on arguments and facts that were before the court below. So you're saying that that wasn't a waiver even though there was that shift and even though the district court talked about corporate Sienter in the most almost by passing way was discussing entirely the individual. And then it said, and no corporate Sienter either. But you're saying that that was enough to keep it from being a waiver forfeiture. Yes, Your Honor. I mean, even as the Second Circuit determined in United States versus Griffiths, the party need only have made some argument to preserve an issue for appeal. It doesn't have to be a mirror image of what was argued below in order to preserve the issue. And once again, the plaintiff did not bring a new theory to the case here. The plaintiff necessarily focused the argument simply because a decision was made not to appeal as to the individual defendants. Ms. Weinrath, I do have a question. Why did you not seek to seek leave of the court to amend your complaint when the court went on the motion to dismiss the complaint? Why did you wait and make a 59 motion post judgment to amend your complaint? So the verdict in the bond is action, in fact, came down four months after the first amended complaint was filed. And before but before but before the decision, before the motion dismissed the complaint. Right. Correct. However, Your Honor, as you had. So you had so you had that information available to you. Why why would you have made the court aware of that and said that you could amend the complaint and plead a possible cause of action? Your Honor, as this court determined in a Lorelei decision and as Judge Calabrese aptly stated there, quote, without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. We felt that the first understand that. But we also say that we're but you you have to assert to get relief post judgment that these are newly discovered facts. So children are facts that you have available to. Well, under the mobile, excuse me, you had them available to you, didn't you? Your Honor, under rule, they were they weren't available at the time the first amended complaint was filed. They were available. I understand that. I understand that. Everybody knows that. I'm talking about when the laws and the complaint was dismissed. Well, it sounds like your honor is asking about the grounds for relief from judgment and plaintiff here. Yes. Plaintiff here relied on rule 60 v six for that request. And the Second Circuit has ruled that it is appropriate to use rule 60 v six to request relief from judgment when requesting permission to amend a complaint. And in fact, there is a very recent decision in the Second Circuit. This is the Brooke versus Simon and Partners LLP decision from 2019. It seems to me that your argument has to be on 60 v. It's got nothing to do with Lorelei. The Lorelei situation is completely different. It was whether somebody could ask to amend when the district court had not yet decided certain things. And then after they decided that they could. It's got nothing to do with this situation. Your argument is something came up in California and that is sufficiently relevant so that we can bring a 60 v motion. That may be so or not, but it's got nothing to do with Lorelei. Well, your honor, focusing. I can focus on rule 60 v six. Relevant rule under which below to allow for amendments. And maybe six simply the case law, both Second Circuit in Indiana, public retirement system versus S.A.I.C. And in the previously mentioned Brooke versus Simon case are clear that rule 60 is an appropriate ground under which to grant relief from judgment when a party is requesting amendment. Particularly because the rule regarding amendments is gives broad discretion to courts to grant amendment. And the reason, your honor, that we cited to the Lorelei decision is because there was no ruling on the issue of the answer at that point in time. So at that point in time, we didn't make a determination that it was necessary to bring the action before to the court. Once the motion to dismiss had been determined and the district court made clear its view on the answer issue. At that point in time, the district court had entered judgment and did not provide leave to replete. So we requested under rule 60 v six for relief from judgment in order to amend the complaint to add very compelling the answer allegations from the Bahamas action, which are directly analogous and applicable here. You said the district court didn't grant leave to replete. You didn't ask for it. Your honor, we. Did you? Did you ask for it? I believe it was in footnote in the opposition brief, but I would have to go back and check on that. All right. All right. Let's pause there. You've served reserved three minutes for rebuttal. I should note just in the interest of full disclosure that I was the district attorney in Lorelei and I'm still smarting from Calabrese reversal. We'll now hear from Mr. Jordac for six minutes and you get the first three free. Mr. Jordac. Great. Thank you. Good morning, Your Honor. May it please the court. My name is John Jordac. I'm with the firm Austin and Bird and I represent the Avanos defendants. And with me today is my partner, Elizabeth Clark. The district court's decision should be affirmed for two reasons. First, plaintiff waived the corporate scienter argument he now presents for the first time on appeal. Second, even if plaintiff did not waive this argument, the PSAC does not plausibly allege corporate scienter in any event. An amendment is futile. Attorney, could you talk into the microphone more and more slowly? Thank you. Is this better? Yeah. A little better. But keep your voice up. Yeah. Okay. Turning first to waiver, it is undisputed the motion to amend did not argue corporate scienter below in the absence of the individual defendant scienter. Plaintiff claims he did not waive this new corporate scienter argument because, one, it is based on allegations in the PSAC, and, two, he's merely shifted the focus of the motion to amend corporate scienter argument. But as this court has explained in cases such as Iconics and Nortel, if there's no development below the argument raised on appeal, the new argument has been waived, even if it's entirely based on facts or allegations in the record. And here plaintiff concedes that he did not raise below the corporate scienter argument he's raised in this appeal, so he's waived it. Plaintiff's final argument on waiver is that, based solely on this court's decision in Ford, the court should exercise its discretion to decide the corporate scienter issue. In that case, there's no resemblance to this one. In Ford, the court considered a waived legal argument because it concerns an issue already considered at some length by the district court. By contrast here, the district court dedicated one sentence about plaintiff's now-abandoned corporate scienter argument based on individual defendants' alleged scienter, and the court did not address plaintiff's new corporate scienter argument because the plaintiff never raised it below. So in contrast to Ford, the district court here hardly considered corporate scienter at some length. Indeed, the district court did not consider plaintiff's new corporate scienter argument at all. Even if there was no waiver, the PSAC failed to plead a strong inference of corporate scienter. Under this court's corporate scienter standard in Dynex, the PSAC must identify someone who acted with the applicable scienter and whose scienter can be imputed to OVENOS. The jury verdict in the California action did not identify anyone whose intent can be imputed to OVENOS, so it does not and cannot establish corporate scienter. And likewise, there's no merit to plaintiff's argument that the alleged scienter of a former OVENOS employee, Mr. Bernard Bizeau, can be imputed to OVENOS. To begin with, the PSAC's allegations in paragraph 43 regarding Mr. Bizeau as a whistleblower are inconsistent with the notion that he possessed any intent to defraud. Moreover, Mr. Bizeau was at least two levels removed from OVENOS executive level management, which just isn't senior enough to impute his knowledge to OVENOS. Accordingly, the PSAC's allegations regarding Mr. Bizeau do not support a plausible inference of corporate scienter as to OVENOS. Thank you. All right, so we'll now hear some questions. If there aren't any, Judge Calabresi, do you have any questions for Mr. Jordak? No. No, I have no questions. And Judge Wesley, do you have any questions? On your waiver issue, the district court did seem to identify the fact that it seemed to the district court that there was a corporate scienter argument being made by the plaintiff, didn't it? So, thank you, Judge Wesley. The argument the plaintiff made in the district court was that it was remedying the defects in its original complaint, which were that there was no pleading of individual defendant scienter. And so the district court acknowledged that the plaintiff had failed to plead corporate scienter because the plaintiff had failed to plead scienter as to the individual defendant. Which is a different theory than what the plaintiffs are arguing on appeal. All right. Okay. Thank you. All right. I have no questions on any of those points. Are there any other points you wanted to address, Mr. Jordak, in your remaining time? The only other point I would address is plaintiff referenced the Grotto case. The language from Grotto pointed by plaintiff followed the court's holding that collateral estoppel applied. And here there's no showing whatsoever in the plaintiff's briefs of how collateral estoppel would apply in this case. So we would argue that Grotto does not apply here. All right. Thank you. We'll now hear from Maimon Joyce. Good morning, Judge Sullivan, and may it please the court. I'm Maimon Joyce on behalf of Kimberly Clark. Even if the court were to find that plaintiff preserved the collective scienter theory and showed extraordinary circumstances under Rule 60, which is the rule not mere ability to amend as in Lorelei, the district court correctly held plaintiff failed to plead Kimberly Clark's corporate scienter. Contrary to DINEX, plaintiff identifies no announcement so dramatic that it establishes the required strong inferences. Indeed, plaintiff's briefs fail to mention DINEX at all. For good reason. Plaintiff can't make the required showings. Kimberly Clark's statements are the antithesis of dramatic illustrations of corporate deception, like in that GM hypothetical. Rather, our briefs alternative ground section shows these statements don't even support a claim of falsity under Singh v. Cigna and its progeny. On scienter, I have three points. First, as noted, plaintiff failed to identify anything as dramatically important to investors or dramatically false as in the GM hypo. Only one of Kimberly Clark's statements is even directed at investors, and the statements don't mention the microcool gowns, emphasize that the gowns continue to meet any level four standards, or otherwise show that the company knew its generic comments about protective equipment were false. And these statements are nowhere alleged to be what grounded the jury verdict in California. Indeed, that case was, as Ms. Weinrig said earlier today, was about statements made to healthcare providers through labeling, through sales representatives. Those statements aren't alleged here. A ruling in plaintiff's favor would collide with Smallin v. Western Union, in which the Tenth Circuit rejected a much stronger regulatory compliance-based side-enter theory. Their defendant said it was in compliance with AML and anti-fraud laws, and then entered a DPA, admitting it willfully failed to comply with those laws. The Tenth Circuit found that that side-enter claim failed under the GM hypo and was fraud by hindsight. Jackson's allegations are much weaker. Ms. Weinrig didn't file a response to her 28-J letter on Smallin. Her firm handled that case in the Tenth Circuit. All of that is notable. Second, also dispositive, and is another issue not in compliance- Excuse me. You have one more minute. Is the failure to plead any connection between any of the three Bahamas witnesses and any of the Kimberly-Clark statements. Dynex suggested such connections were necessary, since Dynex, the Tenth, and Sixth Circuits have expressly held that they are, as have Judges Etkin, Kodal, and others applying Dynex. The inability to plead those connections here is remarkable, because unlike in the traditional telehealth case, plaintiff has effectively had discovery. They have the whole Bahamas trial record. Finally, there are many inferences contrary to science here, in the same things that plaintiff is pleading about high-ranking officials purportedly knowing about compliance issues. If you look at A44, paragraph 42, and what that allegation is quoting, A228, a meeting that Ms. Bauer attended in December 2012 or January 2013, the quoted testimony does not mention microcool. It instead refers to noncompliance issues that Ms. Bauer had experienced for more than a decade, which cannot possibly be about microcool, which was only on the market for two years. And moreover, the witness testified that Bauer was visibly irate and gave us direct marching orders, that this has been a nightmare for 10 years. I want this fixed. That lines up with cases like Slayton v. Chemex, where Judge Calabrese was on the panel, where he had a manager directing subordinates to investigate. That cuts against SCI-ANTER. That's a prudent course of action that weakens rather than strengthens an inference of SCI-ANTER. And this is a case where, contrary to Tell Labs, there are omissions and ambiguities at every turn that count against inferring SCI-ANTER. The witnesses aren't connected to the statements. The witnesses aren't connected to approval of the statements. And the statements identified, as I just said, don't even identify microcool. The court should affirm. All right, let's see if we have questions from the panel. Judge Calabrese, do you have any questions for Mr. Joyce? I have no questions. And Judge Wesley, do you have any questions for Mr. Joyce? No. Okay, neither do I. Mr. Joyce, anything else you'd like to say in your remaining time? No, thank you, Your Honors. Okay, that was the right answer. We will now hear Ms. Weinrib for three minutes of rebuttal. Ms. Weinrib, you may proceed. Thank you, Your Honor. First, I'd like to address something just simply incorrect that was stated in defense counsel's argument, which is that the statements alleged in the Bahamas action are not the same statements that are alleged here. That's simply false. We allege in our complaints, and that includes the proposed second amended complaint and the previous complaints, that defendants' misstatements included statements on product labeling, statements in marketing materials, statements on the website, all of which were publicly available, and all of which were included in the Bahamas action. So that's just simply false. The defense counsel also mentioned the Dynex case, so I will reference that as well. That case actually held in our favor that you do not need to plead scienter as to a, quote, expressly named officer in order to plead scienter. That was a completely different case also than here. There, there was no scienter because the plaintiffs hadn't identified documents to which they claimed defendants had access. They had argued defendants failed to review information. They had a duty to monitor but didn't identify those reports. Here, the allegations of scienter are far stronger. We have a jury verdict based on the exact same misconduct where the jury found by clear and convincing evidence that the same corporate defendants issued the same misleading statements as alleged here with scienter, and they based that ruling on the sworn testimony that is also now included in the proposed second amended complaint. Counsel mentioned that testimony, including the testimony of Ms. Dower, was not about microcool. That's also false. The testimony was given in the Bahamas action. The subject of the Bahamas action was the microcool gown and statements that were misleading about the microcool gown. The subject of her testimony, including the compliance failures, clearly also implicated and predominantly focused on the microcool gown. Defense counsel mentioned the Ford decision and why they claim it's not applicable here. The Ford decision is absolutely applicable here, even if the court were to determine that corporate scienter that is having one more minute. Thank you, Your Honor. Even if the panel was inclined to agree with defendant's position that the corporate scienter argument is a new legal argument, the Ford court second circuit stated that new legal arguments were permissible as long as additional findings of fact are not required. All the facts upon which this appeal is based were present in the record below and were part of the newly added allegations that proposed second amended complaint for which the plaintiff asked for permission to amend and for relief from judgment in order to file that amendment. Defendants also, when they argued waiver in their brief, only cite two plaintiff's arguments on the motion to dismiss the first amended complaint, none of which are relevant here. The motion sought leave to file a proposed second amended complaint, which has newly added allegations upon which the scienter argument is currently based. I do have one question, if I may. Opposing counsel, this is Calabresi. Opposing counsel said that the lower court, the district court decided mentioned corporate scienter in response to your argument of corporate scienter based on individual scienter and corporate scienter. The district court did not discuss collective corporate scienter, which is the only argument you are making on appeal. Is that correct? Well, your honor, that's part of what we're arguing here is that the district court did not consider all of what plaintiff put before it in the motion, which includes the theory of collective scienter, which is based on the testimony of high level employees, management level employees, which was added to the proposed second amended complaint, which was before the court, as well as the jury verdict in the Bahamas action. Both of those things are reasons why we say the district court erred in its decision. But the idea of corporate scienter and the concept of corporate scienter was raised below. Yes? Hello? I think you're cutting out, Ms. Weinrub. You're cutting out. Oh, I'm sorry. I'm not sure what was heard and what wasn't. I could repeat the entire response if the panel so wishes. I'm not sure what was heard. I think we're over, so maybe just wrap it up with some of your last thoughts. Okay. The point that I was making simply was that our argument in this appeal is that the district court made a mistake in not considering arguments that were before it, which includes the additional allegations regarding the sworn testimony of management level employees and the Bahamas action jury verdict, which based its ruling upon that sworn testimony. The district court didn't consider any of that, which is why it's not present in the opinion below and which is what we are appealing today. All right. Okay. Thank you. We will reserve decision, but thank you all. We'll now move to the next case on the calendar.